NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELIESEL SANTIAGO, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 02-4506 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of plaintiff Eliesel Santiago ("Plaintiff") from the Commisioner of Social Security's final decision that Plaintiff was not entitled to disability insurance benefits or supplemental security income payments under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plainiff's appeal.

**I. BACKGROUND**

On May 10, 1999, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments under Title II Part A and Title XVIII of the Act, alleging disability as of January 15, 1999. Record ("R.") at 20. The claim was denied initially and on reconsideration, and a request for a hearing was timely filed. Id. Plaintiff did not previously file an application for disability benefits. Id. On or about September 11, 2000, Plaintiff filed a Request for Hearing by an Administrative Law Judge ("ALJ"). R. at 68. On

November 30, 2001, ALJ Joel H. Friedman conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  <u>See</u> R. at 20.

 Plaintiff testified that he worked at his last job at a Haagen Dazs ice cream plant until it closed in January 1999.  R. at 37.  Plaintiff testified that he then collected unemployment for about one year and six months after the plant closed since he claimed that he was able to work.  R. at 37.  Plaintiff's job at the plant included standing and walking for much of the day and carrying up to twenty-pound packages to a loading platform.  R. at 37-38.

 Plaintiff testified that he has a history of cataracts and glaucoma, and he claimed that his poor vision prevents him from working.  R. at 35.  Plaintiff testified that he stopped driving due to vision problems approximately a year prior to the hearing.  R. at 33.  Plaintiff alleged that he was unable to work because he suffered from diabetes, high blood pressure, and poor vision.  R. at 35.  Plaintiff also testified that he suffered from fatigue and weak knees.  R. at 35.  Plaintiff's vision improved after he underwent surgery on his cataracts, but he claimed that it still was not 100%.  R. at 36.  Plaintiff also testified that he needed reading glasses.  R. at 36.

 Plaintiff testified that he took medication for high blood pressure, diabetes, and high cholesterol.  R. at 39.  Plaintiff denied taking any medication or seeing a professional for depression or any other mental impairment.  R. at 39.  Plaintiff testified that he had taken Amytriptiline for neuropathy, but not for over six months.   R. at 39.  Plaintiff denied suffering from any side effects caused by his medication regimen.  R. at 39-40.

 During questioning by the ALJ, Plaintiff testified that he enjoyed walking, and that he was fully independent functionally in personal care and basic self help.  R at 42-44.  Plaintiff testified that his typical daily activities include walking to the park, reading the paper, and doing

some light house work.  R. at 41.  Plaintiff testified that his doctor had instructed him to walk for approximately fifteen minutes twice a day, which he did.  R. at 43.  Plaintiff did not have any problems sitting, but standing sometimes made him dizzy, although not on a daily basis.  Id.  Plaintiff testified that he had trouble sleeping at night since his son passed away and that he did not nap during the day.  Id.  Plaintiff told the ALJ that he and his wife were both depressed on account of losing their son, but that the depression had not affected their appetites.  R. at 44-45.

     Vocational expert Rocco Meola testified that Plaintiff's job at the Haagen Dazs plant consisted of unskilled work that ranged from light to medium exertion.  R. at 49-50.  He also testified that Plaintiff could do the following jobs if limited to low stress medium work, excluding fine detailed work, which would only require gross vision to avoid hazards: packager, assembler, and hardware loader.  R. at 53.  The vocational expert testified that, of the jobs listed, there exist approximately 1,500 regionally and 75,000 nationally.  R. at 53.  According to the vocational expert, Plaintiff was able to return to his prior work.  Id.

     On December 6, 2001, the ALJ issued a decision denying Plaintiff's application.  R. at 17-27.  The ALJ found that Plaintiff had severe impairments consisting of diabetes, hypertension, adjustment disorder, and a history of cataracts and glaucoma.  R. at 26.  Nonetheless, the ALJ concluded that Plaintiff did not have an impairment, or combination of impairments, which met or equaled the criteria for any impairment listed in Subpart P, Appendix 1 to Regulation No. 4 ("the Listing").  Id.  The ALJ further found that Plaintiff's testimony regarding his symptoms and ongoing limitations were not supported by the records of his treating physicians and therefore not persuasive.  R. at 24.  Based on the testimony of the vocational expert, the ALJ found that Plaintiff has the residual functioning capacity of low stress, medium work with visual limitations

in performing fine, detailed work. R. at 26. The ALJ further found that Plaintiff's previous relevant work as a box lift operator did not require performance of work related activities that were beyond his residual functional capacity. Id. Therefore, the ALJ concluded that Plaintiff's diabetes, hypertension, history of cataracts and glaucoma, and adjustment disorder do not prevent him from performing his past relevant work. R. at 24. On or about January 22, 2002, Plaintiff filed a request for review of the hearing decision. R. at 14. On or about July 26, 2002, the Appeals Council denied the request. R. at 11-12. On or about October 25, 2002, the Appeals Council vacated the earlier decision to consider further arguments and again denied the request. R. at 8-9. Plaintiff then filed the instant action in this Court.

**II. DISCUSSION**

    A.  <u>Standard Of Review For Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d. Cir 1999)(quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)(citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not

satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(internal citations omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

      B.  Standard for Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's

evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. Id. If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1530(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. Id. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments contained in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functioning capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. §404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. Id. If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the claimant's RFC assessment, together with claimant's age, education and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other work in the national economy because of her

impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrated that the impairments meet or exceed those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work."  Id.  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Id.  The five-step analysis "can be quite fact specific."  Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

    C.  <u>The ALJ's Decision Was Based Upon Substantial Evidence In The Record</u>

Plaintiff asserts that the ALJ committed legal error in finding Plaintiff not disabled at step 3 of the sequential evaluation process and further that he did not fulfill his responsibility of explaining his finding.  Pl.'s Br. at 9.  However, Plaintiff's argument is inaccurate.  Prior to the ALJ's determination that Plaintiff was not disabled, he explicitly discussed each of the impairments that Plaintiff asserted, referencing relevant medical and clinical evidence in the record.  R. at 22-24.  The medical evidence in the record, cited by the ALJ, indicated that

Plaintiff has diabetes, hypertension, a history of cataracts and glaucoma, and an adjustment disorder. R. at 22. First, the ALJ discussed Plaintiff's history of diabetes, noting that his condition was treated with oral medication and diet. R. at 22. The ALJ further noted that although Plaintiff's glucose levels appeared uncontrolled based on test results, there was no evidence of organ end damage. Id. The ALJ also referenced Dr. Wilchfort's report dated July 28, 2000, which found no objective evidence of neuropathy. R. at 23. Dr. Wilchfort had reported that Plaintiff responded normally to pinprick sensation, reflexes, and vibration tests, plus fine hand movements and grip strength. R. at 23; see also R. at 232-37.

Next, the ALJ specifically discussed Plaintiff's history of cataracts and glaucoma, and his allegation of poor vision. R. at 22. The ALJ relied on medical evidence and reports that documented the improvement of Plaintiff's vision after he had surgery. R. at 22-23; see also R. at 329. The ALJ also cited Plaintiff's own testimony, which disputed his allegations of a disabling vision impairment as he stated that he only needed to use over-the-counter reading glasses. R. at 36. The ALJ also cited to Plaintiff testimony that his daily activities included reading the newspaper and watching television. R. at 42.

Next, the ALJ reviewed the relevant medical evidence regarding Plaintiff's heart condition. The ALJ noted that Plaintiff took the appropriate medication to treat his condition. R. at 23. The ALJ again referenced Dr. Wilchfort's July 2000 report which stated that his hypertension was controlled "nicely" and that his blood pressure was 140/80. Id.; see also R. at 233.

Finally, with regard to Plaintiff's claim of suffering from depression, the ALJ noted Dr. Figurelli's findings in his examination of Plaintiff. R. at 23. The ALJ noted that the symptoms

Plaintiff had reported to Dr. Figurelli included sleep disturbance, appetite irregularity, and preoccupation with his son's death.  Id.  The ALJ discussed Dr. Figurelli's diagnosis that Plaintiff was mildly depressed, but oriented and coherent with logical thought process and that Plaintiff showed no evidence of a thought disorder or any significant preoccupation with his thoughts.  Id.

Consequently, the record does not support Plaintiff's assertion that his conditions met Listing level severity or that the ALJ failed to adequately consider the record on this regard.  The ALJ is not required at step three to structure his analysis in any particular format or use any particular language.  See Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004).  Rather, there must be sufficient development of the record and explanation of the findings to permit a meaningful review of the ALJ's step three findings.  Id.  The ALJ's decision, when read as a whole, illustrates that the proper factors were considered in reaching the conclusion.  Id.  Furthermore, an ALJ is not required to set forth and analyze every piece of evidence in the record.  See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Instead, the ALJ must note the essential considerations upon which the decision was based, with sufficient specificity so as to enable the reviewing court to decide whether the disability determination was supported by substantial evidence.  Id.  The Court finds that the ALJ met that burden in this case and this point on appeal is not grounds for remand.

Plaintiff further contends that remand is warranted because the ALJ did not include certain restrictions identified by the State Agency psychiatrists in the hypothetical presented to the vocational expert.  Pl.'s Br. at 15-25.  However, Plaintiff testified that his job involved standing, walking, and lifting and carrying approximately twenty pounds of ice cream to a

9

loading platform.  R. at 37-38; see also R. at 46-47.  According to the vocational expert, this job ranged from light to medium in exertion and was considered unskilled.  R. at 49-50.  The ALJ found that Plaintiff is capable of low stress, medium work that did not require the performance of fine, detailed work and properly concluded that Plaintiff could perform his past job.  R. at 26.  Therefore, the ALJ's RFC determination was fully compatible with Plaintiff's work demands.

The ALJ's assessment was further supported by the clinical findings of examining psychologists who noted that Plaintiff had no difficulty with immediate recall, as would be necessary for the performance of less detailed work.  R. at 23.  Additionally, the ALJ noted Dr. Figurelli's diagnosis that Plaintiff's recent symptoms of depression were a direct reaction to the death of his son, suggesting that any limitations this caused were situational and short term.  Id.  Furthermore, Plaintiff did not seek psychiatric treatment outside of this required evaluation.  Id.  Therefore, the ALJ's RFC determination adequately reflected Plaintiff's non-exertional as well as exertional limitations that were supported by the evidence in the record.  Accordingly, the Court finds that the ALJ's determination that Plaintiff could return to his past work is based on substantial evidence in the record.  Consequently, this point on appeal is not grounds for remand and Plaintiff's appeal is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 3, 2006

                                                        s/ Garrett E. Brown, Jr.
                                                        GARRETT E. BROWN, JR., U.S.D.J.